Dr. Victor MANON and Dr. Ermelinda Manon, Appellants/Cross–Appellees,

v.

TEJAS TOYOTA, INC., Appellee/Cross–Appellant.

No. 14–03–01319–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 7, 2005.

744

Lorraine Margarita Manon, Houston, for appellants.

Eugene J. Pitman, Houston, for appellee.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

J. HARVEY HUDSON, Justice.

Appellants/Cross–Appellees, the Manons, argue in two points of error that the trial court erred by: (1) not awarding the full amount of "cover" damages for breach of contract; and (2) refusing to award attorney fees. Appellee/Cross–Appellant, Tejas Toyota, Inc., ("Tejas") argues: (1) "cover" damages are not the appropriate measure of damages in this simple breach-of-contract case; (2) the evidence is legally and factually insufficient to support the submission of and the jury's answers to questions presented in the jury charge; and (3) the trial court submitted an erroneous charge which led to the award of improper damages.

### Factual and Procedural Background

The record reflects that in September 2000, the Manons sought to purchase a new Toyota Sienna mini-van from Tejas. The Manons clearly specified their desire to purchase a van with a certain color exterior, wood-grained interior, and a trailer hitch. Unable to procure a 2000–model in the desired color, Tejas offered to sell the Manons a comparable 2001–model Sienna at the same price as the 2000 version. The Manons agreed and Tejas subsequently delivered a 2001 Sienna. The van, however, did not have the wood-grained interior or trailer hitch. At Tejas' insistence, the Manons accepted the van as delivered, but did so only on condition that Tejas install the desired features. Tejas consented and assured the Manons that it had ordered the necessary parts and would install them as soon as they were delivered to the dealership.

As promised, Tejas subsequently placed a trailer hitch on the van. However, shortly after being mounted on the van, the hitch had to be removed because it began causing an excessive rattling noise. Meanwhile, approximately in March of 2001, Tejas informed the Manons that Toyota had discontinued making the wood-grained interior for the 2001–model Sienna van. As such, Tejas explained that it would be unable to install the wood-grained trim as promised. As a concession, Tejas offered to refund the approximate value of the wood trim and trailer hitch and also agreed to discount $1,000 off a new, substitute vehicle. The Manons refused to accept these terms and, instead, traded in the 2001 Sienna van to another dealership and purchased a 2001 Toyota Sequoia Sport Utility Vehicle.

After purchasing the SUV, the Manons sued Tejas for breach of contract, fraud, negligent misrepresentation, and alleged violations of the Texas Deceptive Trade Practices Act. The Manons requested as damages either the original purchase price of the Sienna van or the difference between the cost of the SUV and the amount they received for the trade-in of the van. They also sought to recover attorney fees. The trial court granted summary judgment for the Manons on their breach-of-contract theory but ordered the parties to proceed to trial on the remaining issues— including damages and attorney fees. However, at trial, the Manons failed to introduce proof of the reasonableness of their attorney fees. Accordingly, the trial court entered an instructed verdict in Tejas' favor on that issue. Subsequently, the jury found Tejas liable and awarded the

Manons $8,422 plus interest for actual damages[1] and $5,000 in exemplary damages.

### Breach–of–Contract Damages

In the Manons' first point of error, they argue the trial court erred by not awarding the full amount of contract damages to which they are entitled. Specifically, the Manons contend they should have received "cover" damages equal to the difference between the cost of the Sequoia SUV they subsequently purchased and the price of the Sienna van they originally purchased, i.e., $10,199.89.[2] Furthermore, they claim they were entitled to incidental and consequential damage of $7,300.00.[3] Thus, the Manons' total request for breach-of-contract damages equals $17,499.89. In support of this request, the Manons rely on Texas Business & Commerce Code sections 2.608, 2.711, and 2.712.

Under Texas Business & Commerce Code section 2.608, a buyer who accepts a good is entitled to revoke acceptance if the buyer proves a non-conformity exists that substantially impairs the value of the good. TEX. BUS. & COM.CODE ANN. § 2.608 (Vernon 1994). If the buyer justifiably revokes, he is entitled to "cover," i.e., purchase a reasonable substitute good and seek damages for the difference between the cost of the substitute good and the contract price of the original good. Id. §§ 2.711–.712. In

addition, the buyer may recover any incidental or consequential damages he suffered. Id. §§ 2.712, 2.715.

However, to be entitled to "cover" damages the plaintiff must plead and prove that the good was non-conforming in such a way that its value was substantially impaired. See id. § 2.608; Freeman Oldsmobile Mazda Co. v. Pinson, 580 S.W.2d 112, 114 (Tex.Civ.App.-Eastland 1979, writ ref'd n.r.e.); Bill McDavid Oldsmobile, Inc. v. Mulcahy, 533 S.W.2d 160, 164 (Tex. Civ.App.-Houston [1st Dist.] 1976, no writ). In addition, the plaintiff must prove that he purchased the substitute good in "good faith" as a reasonable substitute. See TEX. BUS. & COM.CODE ANN. § 2.712; Mueller v. McGill, 870 S.W.2d 673, 675–76 (Tex.App.-Houston [1st Dist.] 1994, writ denied); Kiser v. Lemco Indus., Inc., 536 S.W.2d 585, 589–90 (Tex.Civ.App.-Amarillo 1976, no writ).

The Manons claim they were entitled to revoke acceptance of the Sienna because its non-conformities substantially impaired the value of the van to them.[4] They further contend that the Sequoia SUV was a reasonable substitute for the Sienna van and point to deposition testimony from one of Toyota's own expert witnesses to support this contention.[5] In light of this evidence, the Manons argue they established the required elements under Business & Commere Code sections 2.608, 2.711, and

1. The $8,422 in actual damages was apparently apportioned by the jury as follows: $591 for breach of contract; $7,831 for misrepresentation/deceptive trade practices.

2. $43,499.89 [Sequoia SUV cost]—$33,300 [original Sienna van price] = $10,199.89.

3. $33,300 [original Sienna van price]—$26,000 [received for the Sienna as trade-in allowance for the Sequoia SUV from another dealership] = $7,300.

4. The Manons argue in their appellate brief that they would not have purchased the van

without the wood-grained trim. They contend the van was "ugly" without this trim and that this ugliness must be considered when assessing the allegedly impaired value and the appropriate measure of damages. They further claim that "beauty"—and therefore value—is in the eye of the beholder.

5. The witness described the two vehicles as comparable, by industry standards, in terms of towing-capacity, number of passengers they could carry, and price range.

2.712 and suggest they proved their right to receive "cover" damages *as a matter of law.*

In response, Tejas argues in its first point of error and in reply to the Manons' first point, that the Manons were not entitled to revoke acceptance and that "cover" damages are inappropriate. Tejas does not contest that it breached the sales contract or that it is liable for this breach. Instead, Tejas contends the Manons failed to sustain their burden on two important fact issues, namely, that: (1) the Sienna was substantially impaired due to the lack of wood-grain trim; and (2) the Sequoia SUV was a reasonable substitute for the Sienna van. As such, Tejas argues that sections 2.608, 2.711, and 2.712 of the Business & Commerce Code are inapplicable. Instead, Tejas contends that section 2.714 provides the proper measure of contract damages.

Under section 2.714, a buyer who accepts a non-conforming good and who has no right to revoke the acceptance is limited to recovering the difference between the value of the good as received and the value had the good been conforming. TEX. BUS. & COM.CODE ANN. § 2.714. Applying this section, Tejas argues the Manons' recovery is limited to $591, the estimated difference in value between the Sienna the Manons received and a Sienna with the options they requested.[6]

To be entitled to "cover" damages under section 2.608, the Manons were required to plead and prove that the Sienna's non-conformities substantially impaired the van's value. *See* TEX. BUS. & COM.CODE ANN. § 2.608; *Pinson,* 580 S.W.2d at 114; *Mulcahy,* 533 S.W.2d at 164. The Manons were also required, under section 2.712, to prove that they purchased the Sequoia SUV in "good faith" as a reasonable substitute for the Sienna van. *See* TEX. BUS. & COM.CODE ANN. § 2.712; *Mueller,* 870 S.W.2d at 675–76; *Kiser,* 536 S.W.2d at 589–90. Both of these issues are questions of fact which should have been submitted to the jury. *See Vista Chevrolet, Inc. v. Lewis,* 704 S.W.2d 363, 368 (Tex.App.-Corpus Christi 1985), *aff'd in part, rev'd in part,* 709 S.W.2d 176 (Tex.1986) ("The determination regarding whether the defect or nonconformity substantially impaired the value of the good to the buyer to justify revocation of acceptance is a fact issue for the trier of fact to determine."); *Mueller,* 870 S.W.2d at 676 ("Whether a cover purchase is reasonable poses a 'classic jury issue.'") (quoting *Am. Carpet Mills, Etc. v. Gunny Corp.,* 649 F.2d 1056 (5th Cir.1981)); *Kiser,* 536 S.W.2d at 585, 590 ("[W]hat constitutes good faith under the circumstances of a particular case is a question of fact to be resolved by the fact finder.").

Because the Manons did not request a charge to submit these fact issues for determination by the jury, they contend on appeal that these issues were established in their favor as a matter of law. But while the Manons presented some evidence that the Sienna's non-conformities substantially impaired its value, they failed to establish this fact as a matter of law. The Manons, for example, claimed the Sienna was "ugly" without the wood-grained trim and that they would not have purchased the van without the trim. However, this alone is insufficient to establish, *as a matter of law,* that the Sienna was substantially impaired. *See Pinson,* 580 S.W.2d at 114. The Manons also relied on testimony

6. This amount is based on the jury's answer to "Question No. 3(a)"—the only uncontested jury charge question—which asked the jury to determine the difference in value between what the Manons received [the Sienna without the wood trim] and what they requested [a Sienna with wood trim], *i.e.,* standard breach-of-contract damages.

from a Tejas employee who explained that a person would likely not purchase a vehicle if that vehicle was missing certain desired features. However, this is also not enough to prove, *as a matter of law,* that the Sienna's value was substantially impaired. *See generally Kiser,* 536 S.W.2d at 589 (explaining that without "legal certainty" that a party properly covered, a court should not hold that the party proved its right to cover as a matter of law).

■ Further, the jury determined that the lack of wood-grained trim and trailer hitch constituted a difference in value of only $591. This represents an "impairment" of slightly more than one percent of the van's total value.[7] Much like the court in *Pinson,* we do not conclude the value of the Sienna was substantially impaired by a decrease in value of such a slight amount. *See* 580 S.W.2d at 114 (holding "as a matter of law that a $75 to $100 defect in a $5,720.33 automobile [or just over 1% of the car's total value] is not such a nonconformity as to substantially impair the value of the car.")

■ Likewise, while the Manons offered some evidence that the Sequoia SUV was a reasonable substitute for the Sienna van, the proof hardly establishes this fact as a matter of law. Having breached the contract, Tejas made several concessions in an effort to reach an amicable compromise agreement. The Manons could have accepted Tejas' offers by taking a refund of the value of the wood trim and hitch and

purchasing a new, substitute vehicle from Tejas with the $1,000 discount. The Manons also could have returned the Sienna to Tejas and obtained a similar van from another Toyota dealership; or they could have returned the van to Tejas and attempted to purchase a similar van from a different car manufacturer. While the Manons were under no obligation to accept Tejas' concessions or to take any of the specific actions listed above, they were required to act reasonably in procuring a substitute vehicle. *See* Tex. Bus. & Com. Code Ann. § 2.712; *see also Pinson,* 580 S.W.2d at 114 (holding that a plaintiff failed to prove revocation after he refused a car dealership's offer to make repairs at no cost to him). Instead, the Manons took the Sienna van they purchased from Tejas to another dealership, accepted a lower trade-in price for the van, and purchased an SUV which cost over $10,000 more than what they originally paid for the van.[8] We hold the Manons did not establish, as a matter of law, that they, in good faith, obtained a reasonable substitute as required by the Texas Business & Commerce Code. *See* Tex. Bus. & Com.Code Ann. § 2.712; *see Pinson,* 580 S.W.2d at 114.

Because the Manons did not request a jury charge question on either of these crucial fact questions, and neither the jury nor the trial court ever made any explicit findings on these issues, the Manons failed to prove they were entitled to revoke acceptance.[9] As such, they were precluded

---

7. A $591 decrease in value of a $33,300 vehicle represents an "impairment" of 1.77%.

8. As Tejas points out in its appellate briefs, the price of the Sequoia SUV was greater than 125% of the purchase price of the Sienna van. While there is no magic number which makes a substitute good reasonable or not, we agree with Tejas that this 125%—or greater than $10,000—increase in price raises a serious question as to whether the SUV was

a reasonable substitute. This question should have been submitted to the jury, but because it was not we will deem a finding on the issue consistent with the judgment. *See, e.g.,* Tex.R. Civ. P. 279.

9. Citing Texas Rule of Civil Procedure 279, the Manons argue that even if these issues were required elements that should have been submitted to the jury, Tejas waived this complaint by failing to object to the missing ele-

from recovering damages for "cover," but instead, were entitled only to standard breach-of-contract damages under section 2.714 of the Texas Business & Commerce Code. *See* TEX. BUS. & COM.CODE ANN. § 2.714; *Aquamarine Assocs. v. Burton Shipyard, Inc.*, 645 S.W.2d 477, 480 (Tex. App.-Beaumont 1982), *aff'd*, 659 S.W.2d 820 (Tex.1983) (limiting recovery of cover damages where party failed to submit issue of reasonableness to the jury).

Having determined that the Manons failed to properly plead, prove, and submit to the jury the issues of whether the Sienna's value was substantially impaired and whether the Sequoia SUV was a good-faith, reasonable substitute for the van, we hold that Business & Commerce Code section 2.714 provides the proper measure of contract damages in this case. Having concluded that the Manons failed to prove substantial impairment or good faith reasonable substitute as a matter of law, we are guided by a deemed finding—consistent with the trial court's judgment—that the Manons did not prove substantial impairment or reasonable substitute. Accordingly, we overrule the Manons' first point of error, sustain Tejas' first point of error, and affirm the trial court's award of $591 for breach of contract.

### Attorney Fees

In their second point of error, the Manons claim the trial court erred in refusing to award attorney fees. Specifically, they contend the award of attorney fees is mandatory when a party prevails under either the Texas Deceptive Trade Practices Act ("DTPA") or chapter 38 of the Texas Civil Practice and Remedies Code. They argue that because they prevailed against Tejas, the trial court was required to award attorney fees.

Prior to trial, the Manons moved for summary judgment on all their claims including their request for attorney fees. Along with their summary judgment motion, the Manons provided an affidavit from their attorney detailing the requested fees and describing the fees as reasonable. The trial court granted the Manons' summary judgment motion on the issue of contract liability but denied the motion as to all additional claims. Therefore, the issue of attorney fees proceeded to trial along with the Manons' other affirmative claims for relief.

At trial, the Manons failed to make any reference to the affidavit provided with their summary judgment motion and did not have their attorney testify about the reasonableness of the requested attorney fees. Accordingly, Tejas moved for an instructed verdict on the issue of attorney fees, claiming the Manons failed to put forth the necessary evidence that the requested fees were reasonable. The trial

ments. Rule 279 provides that a trial court may make a finding on an omitted element when a party fails to object to the element's omission from the jury charge. *See* TEX.R. CIV. P. 279; *Gulf States Utils.Co. v. Low*, 79 S.W.3d 561, 565 (Tex.2002). However, Rule 279 also explains that when a trial court does not make an express finding on the missing element, the appellate court is to deem a finding on the element in a way that supports the court's judgment if there is some evidence that supports the finding. *See* TEX.R. CIV. P. 279; *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex.1995).

In this case, the trial court made no express findings on the issues of substantial impairment or reasonable substitute. As such, we must deem a finding on these issues consistent with the final judgment. Because the jury awarded breach-of-contract damages consistent with the amount permitted under Business & Commerce Code section 2.714, we interpret this to mean the jury found against the Manons on both issues, *i.e.*, the Sienna's value was *not* substantially impaired and the $43,000 SUV was *not* a reasonable substitute for the $33,000 van.

court granted the motion and denied the Manons' request for attorney fees.

The Manons argue on appeal that because they prevailed on their affirmative claims, the award of attorney fees was mandatory. They further claim that because Tejas failed to provide any evidence which controverted their affidavit on attorney fees, they established these fees as a matter of law. Alternatively, the Manons argue that the trial court should have taken judicial notice of the reasonableness of the requested fees. They point out that under chapter 18 of the Texas Civil Practice and Remedies Code, uncontroverted affidavits are sufficient evidence to support an award of attorney fees, and under chapter 38, where there is no evidence of the reasonableness of the fees, a court may take judicial notice of the fees. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 18.001, 38.001 (Vernon 1997).

■ Both the DTPA and the Texas Civil Practice and Remedies Code allow a prevailing party to recover attorney fees. *See* Tex. Bus. & Com.Code Ann. § 17.50(d) (Vernon 2002) (DTPA claims); Tex. Civ. Prac. & Rem.Code Ann. § 38.001 (general attorney fees statute for various causes of action). In fact, an award of attorney fees is mandatory under these two statutory schemes. *See, e.g., Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex.1998) (noting that where statues say a party "may" recover attorney fees, the court has no discretion in awarding those fees). However, before a court can award attorney fees, the party requesting the fees must prove they are reasonable and necessary. *See* Tex. Bus. & Com.Code Ann. § 17.50(d); Tex. Civ. Prac. & Rem.Code Ann. § 38.001; *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818–19 (Tex.1997); *Lesikar v. Rappeport,* 33 S.W.3d 282, 307–08 (Tex. App.-Texarkana 2000, pet. denied).

■ The reasonableness of attorney fees is generally a question of fact for the jury's determination. *Bocquet,* 972 S.W.2d at 21 (quoting *Trevino v. Am. Nat'l Ins. Co.,* 140 Tex. 500, 168 S.W.2d 656, 660 (1943)). To guide the jury's determination, a party may introduce evidence in the form of sworn affidavits attesting to the reasonableness of the fees. *See* Tex. Civ. Prac. & Rem.Code Ann. § 18.001. When these affidavits are uncontroverted, they are "sufficient to support a finding of fact by judge or jury that the amount charged was reasonable or … necessary." *Id.* Furthermore, a court is entitled to take judicial notice of the reasonableness of attorney fees, without the need for additional evidence, if a claim is brought under section 38.001 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 38.003–.004; *Gill Sav. Ass'n v. Chair King, Inc.,* 797 S.W.2d 31, 32 (Tex.1990).

However, while a trial court is entitled to take judicial notice of the reasonableness of attorney fees, the Texas Supreme Court has specifically held that a court may do so only "in [its] role of trier of fact in the conventional trial of a non-jury case *but not in passing on a motion for summary judgment." Coward v. Gateway Nat'l Bank,* 525 S.W.2d 857, 859 (Tex.1975) (emphasis added); *see also Garcia v. Martinez,* 894 S.W.2d 806, 807 (Tex.App.-Corpus Christi 1994, no writ) (stating in dicta that a trial court cannot take judicial notice of attorney fees without a hearing on the evidence); *Gen. Elec. Supply Co. v. Gulf Electroquip,* 857 S.W.2d 591, 601 (Tex.App.-Houston [1st Dist.] 1993, no writ). Therefore, *in a non-jury trial,* a trial court is entitled to enter findings of fact that the requested attorney fees are reasonable; but when the case is tried before a jury, the general rule applies, *i.e.,* the reasonableness of the attorney fees is a question of fact for the jury and must be

supported by evidence introduced at trial. *See generally* Michol O'Connor & Byron P. Davis, O'Connor's Texas Rules, Civil Trials 45 (2003) ("Judicial notice of attorney fees can be taken *only* when (1) the claim is a Texas Civil Practice and Remedies Code § 38.001 claim, and (2) the claim is tried on the merits.") (emphasis added).

■ Here, the only evidence the Manons introduced regarding the reasonableness of attorney fees was included with their motion for summary judgment. Once the court denied the motion for summary judgment and the case went to trial, the Manons were required to put forth this same or other evidence at trial to establish their right to recover attorney fees.[10] *See Garcia,* 894 S.W.2d at 807 ("Where there is absolutely no testimony given at trial concerning an attorney's fee, the reasonableness of such a fee is a question of fact and *must be supported by competent evidence.*") (emphasis added). Because the Manons failed to introduce any evidence of attorney fees at trial, by affidavit or otherwise, they failed to meet their burden on the issue of attorney fees. As such, the trial court did not err in entering an instructed verdict on the issue.[11] We overrule the Manons' second point of error.

## Sufficiency of the Evidence

As cross-appellant, Tejas argues in its third point of error that the evidence is legally and factually insufficient to support the jury's award of damages for anything other than a simple breach of contract. Specifically, Tejas contends that Question 3(b) of the jury charge is unsupported by the evidence, and further alleges that there is no evidence of an independent injury sufficient to award anything other than breach-of-contract damages.

■■ When both legal and factual sufficiency challenges are raised on appeal, the court must first examine the legal sufficiency of the evidence. *See Glover v. Tex. Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981). In reviewing a legal sufficiency challenge, an appellate court considers only the evidence and inferences tending to support the trial court's findings and disregards all evidence and inferences to the contrary. *See Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992); *see also Lenz v. Lenz,* 79 S.W.3d 10, 19 (Tex.2002). Thus, we must examine the record to determine whether some evidence exists to support the finding in question, namely, that the Manons suffered some pecuniary harm or injury as a result of Tejas' misrepresentations. *See id.*

■ In reviewing the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evi-

---

10. We also note that the trial court was entitled to take judicial notice of attorney fees, if at all, *only* on the Manons' breach-of-contract claim, as it was the only claim governed by chapter 38 of the Texas Civil Practice and Remedies Code. *See, e.g.,* Tex. Civ. Prac. & Rem.Code Ann. §§ 38.001, .004; *Gorman v. Gorman,* 966 S.W.2d 858, 867 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *Smith v.Smith,* 757 S.W.2d 422, 425 (Tex.App.-Dallas 1988, writ denied) (refusing to take judicial notice in a DTPA case).

11. The Manons also moved to re-open the evidence to allow them to fully develop their claim for attorney fees. They argue on appeal that it was error for the trial court to deny this motion. However, the record indicates the Manons never obtained a ruling on their motion and, therefore, they have waived any complaint on this issue. *See* Tex.R.App. P. 33.1(a)(1)-(2); *see also Walton Neon Co. v. Travel–Tex Corp.,* 482 S.W.2d 934, 936–37 (Tex.App.-Corpus Christi 1972, writ ref'd n.r.e.) (holding that no error was preserved when a party asked the court to re-open the evidence but made no bill of exception).

dence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). We may not substitute our own judgment for that of the trier of fact, even if we would have reached a different result on the evidence. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex. 1998).

■■■ A closer examination of the jury charge provided in this case indicates Question 3(b) was neither submitted nor answered in error. Once the jury determined that Tejas engaged in misrepresentations or deceptive trade practices under questions one and two, it was tasked with appropriating damages in question three.[12] Specifically, Question No. 3(b) asked the jury to determine "[t]he pecuniary loss, if any, otherwise suffered by [the Manons] and caused by [Tejas'] conduct."[13] Tejas argues that the only pecuniary loss suffered by the Manons was the loss of value stemming from the Sienna's missing wood trim and trailer hitch, *i.e.,* $591. As we already have explained, this amount apparently constituted the damages for Tejas' breach of contract. However, negligent

misrepresentation and/or DTPA violations are compensable actions separate and apart from breach of contract. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 45–47 (Tex.1998) ("A party's actions may breach duties in tort or in contract, *or both simultaneously.*") (emphasis added); *Chapa v. Tony Gullo Motors I,* No. 09–03–568–CV, 2004 WL 1902533, at *4–5 (Tex.App.-Beaumont Aug.26, 2004, pet. filed) (distinguishing cases allowing only breach-of-contract damages, and explaining "[t]his case [about an automobile dealer's failure to provide the vehicle that the plaintiff requested] involves more than mere failure to perform contractual obligations"). Furthermore, Tejas contends that even if the Manons are entitled to recover additional damages, they failed to provide any evidence to support an award of damages beyond the $591.

■■■ Both negligent misrepresentation and DTPA claims allow for recovery of out-of-pocket damages. *See, e.g., D.S.A., Inc. v. Hillsboro Ind. Sch. Dist.,*

---

12. At trial, Tejas also challenged jury questions one and two by arguing the evidence was insufficient to support either submission of the questions or the jury's answers thereto. Questions one and two asked whether Tejas engaged in negligent misrepresentation and deceptive trade practices, respectively. The jury answered "yes" to both questions. Despite Tejas' objections at trial to the first two jury questions, it did not maintain these challenges on appeal and, therefore, has waived any issue regarding these two questions/answers. *See, e.g.,* Tex.R.App. P. 38.1. Accordingly, we begin with the premise that Tejas is liable for misrepresentation and/or deceptive trade practices, and we need only to determine under this point of error whether the Manons properly proved damages.

13. In its entirety, Question 3 was presented to jury as follows:

What sum of money, if any, if paid in cash would fairly and reasonably compensate [the Manons] for their actual damages,

if any, which were proximately caused by Tejas Toyota, Inc.'s conduct. [The question then defined proximate cause and further instructed the jury] [d]o no not include damages for one element in any other element. Do not include in your answer to compensate [the Manons] any amount that you find that [the Manons] could have avoided by the exercise of reasonable care. Do not add any amount for interest on past damages, if any. Consider the elements of damages listed below and none other. Consider each element separately.

a) The difference, if any, between the value of what [the Manons] received in the transaction and the purchase price or value given. [To which the jury awarded $591.00.]

b) The pecuniary loss, if any, otherwise suffered by [the Manons] and caused by Tejas Toyota Inc.'s conduct. [To which the jury awarded $7,831.00.]

973 S.W.2d 662, 663–64 (Tex.1998); *W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex.1988) (defining out-of-pocket and benefit-of-the-bargain damages). In DTPA cases, a plaintiff may seek benefit-of-the-bargain damages—instead of out-of-pocket damages—similar to those recoverable for breach of contract. *See Walters,* 754 S.W.2d at 128 (explaining that out-of-pocket and benefit-of-the-bargain are two measures of damages under the DTPA, and noting that a plaintiff may recover the greater of the two measures). Tejas relies on these principles to argue that the Manons are limited to recovering damages under only one of these two theories, thus precluding the Manons from recovering anything but $591.

 However, the Texas Supreme Court has explained that recovery under the DTPA is not exclusively limited to only these two types of damages. *See Henry S. Miller Co. v. Bynum,* 836 S.W.2d 160, 162 (Tex.1992) (holding that DTPA damages include recovery for "the total loss sustained [by the consumer] as a result of the deceptive trade practice."); *Ludt v. McCollum,* 762 S.W.2d 575, 576 (Tex.1988) ("An aggrieved consumer may [receive] both cost of repair and permanent reduction in market value notwithstanding such repairs, as cumulative rather than mutually exclusive measures of damages [in DTPA cases]."); *see also* TEX. BUS. & COM. CODE ANN. § 17.45(11) (providing for compensatory damages, including cost of repair and replacement in DTPA actions); *D.S.A., Inc.,* 973 S.W.2d at 663–64 (explaining that a plaintiff can recover, in addition to out-of-pocket-expenses, any loss otherwise suffered as a consequence of misrepresentations). Therefore, DTPA damages " 'includ[e] related and reason-

ably necessary expenses.' " *Bynum,* 836 S.W.2d at 162 (quoting *Kish v. Van Note,* 692 S.W.2d 463, 466 (Tex.1985)). As such, a plaintiff is "permitted [to recover] other damages to ensure that the plaintiff is made whole." *Id.*

 Here, the Manons provided evidence—via dealer receipts and other related documents—to support the full extent of damages they requested. The most significant evidence was established through documents indicating the trade-in price they received for the non-conforming Sienna. Despite paying Tejas $33,300 for the original purchase of the Sienna van, the Manons received only $26,000 for the van when they traded it in to another dealer. This represents a difference of $7,300. In fact, this seven-thousand dollar figure is consistent with the amount the jury awarded for additional damages in Question No. 3(b).

Thus, the amount the jury awarded in Question 3(b) directly correlates to the difference in value between what the Manons received and what they eventually had to pay. More precisely, the jury awarded $7,831.00. This amount represents the $7,300 trade-in difference plus a $531 credit that Tejas allegedly neglected to provide the Manons.[14] Obviously, the jurors did not randomly envisage these numbers and then arbitrarily craft a damage award to their own liking. Instead, they relied on the receipts and other documentary evidence that the Manons introduced, and ultimately determined that $7,831 was the additional out-of-pocket monetary amount that the Manons would not have had to pay for the subsequent SUV purchase *but for* the money they lost on the Sienna trade-in. By awarding the

14. The $531 figure came from a $500 trade-in discrepancy—the difference between the appraisal value of the Manons' first van [$3,500 for a Silhouette] and the amount credited by Tejas for trade-in of the Silhouette [$3,000]—plus 6.25% sales tax.

$7,831 amount, the jury apparently was attempting to provide recovery for "the total loss sustained [by the Manons] as a result of the deceptive trade practice [or misrepresentation]." *See Bynum,* 836 S.W.2d at 162. Thus, it appears the jury attempted to "ensure [the Manons were] made whole." *See id.*

Because the Manons provided sufficient evidence to support their claim for damages, and Tejas did not produce any contrary evidence to suggest the Manons' claims were improperly inflated or otherwise unsubstantiated, the evidence sufficiently supports both the submission of Question 3(b) and the jury's answer to the question. Certainly, there is at least some evidence sufficient to withstand Tejas' legal sufficiency challenge. Moreover, after reviewing the entire record and noting the lack of contrary proof, we find the jury's award was not clearly wrong or unjust. Thus, there is also factually sufficient evidence to support the award. Accordingly, we overrule Tejas' third point of error.

### General Charge on Damages

Tejas contends, in its fourth point of error, that the trial court erroneously submitted a general charge on damages, thereby permitting the jury to award damages based on improper elements. Ultimately, Tejas is challenging the jury charge on the notion that it distinguished between multiple theories of liability but improperly submitted only one count of damages to encompass those theories. In support of its complaint, Tejas cites *Harris County v. Smith,* 96 S.W.3d 230 (Tex. 2002), and *Crown Life Insurance Company v. Casteel,* 22 S.W.3d 378 (Tex.2000), in which the Texas Supreme Court explained that an appellate court should order a new trial if the court cannot determine whether the jury's damage award is based on an invalid or unsupported theory of liability.

In this case, "Question No. 1" asked the jury to decide if appellant committed acts of negligent misrepresentation. "Question No. 2" asked the jury if appellant engaged in false, misleading, or deceptive trade practices. "Question No. 3(b)" then asked the jury to determine "[t]he pecuniary loss, if any, otherwise ... caused by [Tejas'] conduct." Therefore, it appears that the jury's answer to Question 3(b) could have been based on a finding of negligent misrepresentation, DTPA violations, or both. If the jury actually awarded damages in the aggregate based on one improper theory, then a remand for new trial would be appropriate under the cases cited by Tejas. However, Tejas did not request a remand and specifically explained to this court during oral argument that it did not desire a new trial. Therefore, Tejas has not requested any relief on this point of error which we could properly grant. *See West End API, Ltd. v. Rothpletz,* 732 S.W.2d 371, 374 (Tex.App.-Dallas 1987, writ ref'd n.r.e.) ("What can be better established than the proposition that relief that has not been prayed cannot be granted? [Appellants] have given no indication anywhere in their briefs that they desire a new trial.... They only ask that we render judgment in their favor.... Nevertheless, we must limit [appellants] to the relief prayed.").

 Moreover, while it would have been better for the trial court to have submitted separate damage questions to coincide with each of the Manons' theories of liability, we do not believe this oversight warrants a new trial. There was sufficient evidence presented at trial to support a jury charge question on both the negligent misrepresentation and DTPA issues.[15]

---

**15.** *See generally* discussion *infra* "Exemplary Damages."

Therefore, the jury's award of damages was not based on an invalid or unsupported theory of liability, but rather, a combination of theories that appear to have been sufficiently supported. Accordingly, we overrule Tejas' fourth point of error.

### Exemplary Damages

In its second, fifth, and sixth points of error, Tejas argues the evidence was insufficient to support a jury question on and an award of exemplary damages. Tejas contends, instead, that the jury awarded "punitive" damages which are not permitted in simple breach-of-contract cases such as this one.

In its brief, Tejas summarily addressed this issue in three sentences. Specifically, Tejas argues there was no jury finding of punitive damages nor of the elements required to award punitive damages under the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.001–.013 (Vernon 1997 & Supp.2004). Tejas also claims the case involved only a breach of contract, and therefore, only breach-of-contract damages, not punitive damages, should have been awarded. In its "Reply Brief," Tejas elaborates on this point of error by distinguishing *exemplary* damages, under the Texas Civil Practice and Remedies Code, from *additional* damages, under the DTPA. *Compare* TEX. CIV. PRAC. & REM.CODE ANN. § 41.001–.013 *with* TEX. BUS. & COM.CODE ANN. § 17.50 (Vernon 2002). Therefore, the crux of Tejas' argument seems to be: the trial court should not have awarded either exemplary or ad-

ditional damages, but at the very least, the trial court awarded the incorrect type of damages, *i.e.,* "exemplary" as opposed to "additional."

As a challenge to the sufficiency of the evidence, we will review the record according to the standard set out above.[16] Here, the record indicates the jury found appellant liable for knowing, intentional, or unconscionable action[17] and then set the amount of damages for this conduct at $5,000.[18] The trial court then entered judgment awarding the Manons "$5,000 for exemplary damages." By describing the damage award as *exemplary*, it appears the court was attempting to apply the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.001–.013 (providing for the award of *exemplary* damages). However, the charge itself mirrors the language for DTPA damages found in the Texas Pattern Jury Charge. *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—BUSINESS, CONSUMER & EMPLOYMENT PJC 110.11 (2000); *but see id.* 110.33–.34 (listing the charge elements required for a finding of exemplary damages). Based solely on these factors, it is difficult to decipher what theory of liability the jury used in awarding the $5,000.

The trial judge also appears to have been uncertain as to which theory of liability was applicable. While considering this issue, the trial judge stated, "Oh, DTPA, same as fraud. I'm still contemplating whether or not I can go under DTPA,

---

**16.** *See* discussion *supra* "Sufficiency of the Evidence."

**17.** This finding was in response to jury charge "Question No. 4," which asked if appellant had committed a knowing, intentional, or unconscionable act to deceive the Manons. The jury answered in the affirmative.

**18.** This award comes from the jury's answer to "Question No. 5" of the charge, which read:

> What sum of money, if any, in addition to actual damages, should be awarded to [the Manons] against [Tejas] because [Tejas'] conduct was committed knowingly or intentionally or was unconscionable?

although I'm leading more toward DTPA and less toward fraud. Okay? *But I haven't totally made up my mind yet. I'll flip a coin.* Okay? All right." Therefore, we agree with Tejas that the damage award is not a model of specificity.

However, this does not mean the damage award is wholly unsupported by the evidence. In fact, the Manons counter by arguing the damage amount was based on their DTPA claim and that the Texas Civil Practice and Remedies Code was not applicable. Furthermore, they contend the jury's affirmative answer to "Question No. 4"—whether appellant committed a knowing, intentional, or unconscionable act—supports the court's award of $5,000 regardless of which theory is applied.

■■■ We agree that there is sufficient evidence to support an award of either *exemplary* or *additional* damages. Under the Texas Civil Practice and Remedies Code, a plaintiff is entitled to recover exemplary damages if he proves, by clear and convincing evidence, that the defendant acted fraudulently, maliciously, or with gross negligence. *See, e.g.,* TEX. CIV. PRAC. & REM.CODE ANN. § 41.003; *KPH Consolidation, Inc. v. Romero,* 102 S.W.3d 135, 144 (Tex.App.-Houston [14th Dist.] 2003, pet. granted). Similarly, the DTPA entitles a plaintiff to recover additional damages, up to three times the amount of economic damages, if the defendant acted knowingly. *See, e.g.,* TEX. BUS. & COM.CODE ANN. § 17.50(b)(1); *see also* TEX. BUS. & COM.CODE ANN. § 17.45(9) (describing a knowing violation as one in which the defendant has "actual awareness" of the falsity, deception, or unfairness of its actions); *Gomez v. Diaz,* 57 S.W.3d 573, 577 (Tex.App.-Corpus Christi 2001, no pet.). Therefore, we will review the record to determine whether the evidence supports a finding that Tejas acted either fraudu-

lently or with actual awareness of the falsity or deceptiveness of its actions.

The record reflects that when the Manons first expressed their desire to purchase a Sienna van from Tejas, they made it very clear that a wood-grained interior was a crucial feature. Realizing that the Manons would likely not purchase a vehicle without the wood trim, Tejas researched the availability of the trim on all Toyota Sienna vans. While Tejas representatives and the Manons were negotiating the purchase of the Sienna, a Tejas salesman determined that wood-grained interior trim was no longer available on any new Toyota Sienna vans. Despite this revelation, Tejas informed the Manons that it had ordered the wood-grained trim and that the trim would be delivered and installed within three weeks. In reliance on Tejas' assurances, the Manons agreed to purchase the Sienna van from Tejas.

When the Manons began experiencing problems with the after-market trailer hitch installed by Tejas, they returned the Sienna for service on the hitch. Tejas again promised the Manons that the wood trim was on order and that it would be installed as soon as possible. Subsequently, the Manons made numerous additional visits to Tejas for repairs on the trailer hitch, and each time, Tejas told the Manons that the wood-grained trim was on order and would be installed as soon as it arrived. After several months had expired and the Manons continued to demand installment of the trim, Tejas finally informed the Manons that the wood-grained trim was no longer available on Sienna vans. Tejas further explained that it would not be able to provide the feature despite repeatedly promising the same.

These facts were all adduced at trial and provided for the jury's consideration. But perhaps the most damaging evidence for Tejas came in the form of dealership

records and testimonies suggesting that, in fact, Tejas never placed an order to purchase the wood-grained trim despite making repeated assurances to the Manons that the trim was on order. Tejas representatives testified on the stand that they had not intended to misrepresent the Sienna's available options or fraudulently induce the Manons into purchasing the vehicle. However, the jury was free to disbelieve this testimony. *See Transmission Exch. Inc. v. Long,* 821 S.W.2d 265, 271 (Tex.App.-Houston [1st Dist.] 1991, writ denied); *Miller v. Kendall,* 804 S.W.2d 933, 939 (Tex.App.-Houston [1st Dist.] 1990, no writ). The jury had an opportunity to review both the dealership records and deposition and live testimony; and based on this evidence, the jury concluded that Tejas had engaged in fraudulent and/or false, deceptive trade practices. Accordingly, the jury awarded exemplary or additional damages for Tejas' conduct. *See generally Pace v. State,* 650 S.W.2d 64, 65 (Tex.1983) ("DTPA [damages] are punitive [and] are not to restore one to his position before the act giving rise to the damages, rather they are to punish the wrongdoer and are an example to others."); *Global Equip. Sales, Inc. v. Smith,* No. 05-99-01046-CV, 2000 WL 566890, at * (Tex.App.-Dallas Apr.26, 2000,) (affirming a trial court's award of additional damages for DTPA, and holding that despite the plaintiff's entwined breach of contract claim, the award was not impermissibly punitive).

Nothing in our review of the evidence, or of the record as a whole, suggests there was insufficient evidence to support either submission of or the jury's answers to the questions on Tejas' liability for misrepresentation/DTPA violations. *See Padgett v. Bert Ogden Motor's, Inc.,* 869 S.W.2d 532, 535-37 (Tex.App.-Corpus Christi 1993, writ denied). Moreover, nothing in our review suggests the jury's award of $5,000 for additional/exemplary damages is unsupported by the evidence. As such, we overrule Tejas' second, fifth, and sixth points of error.

The judgment of the trial court is affirmed.