NO. 07-06-0199-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 14, 2008
______________________________

RANDY BIRKENFELD,

                                                                                                 Appellant

v.

METRO GENERAL MANAGEMENT, INC., 

                                                                                                 Appellee


_________________________________

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-523,580; HON. WILLIAM C. SOWDER, PRESIDING
________________________________
 
 Memorandum Opinion
                                         _______________________________
 


Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
          Appellant Randy Birkenfeld (Birkenfeld) appeals from a judgment entered by the trial
court with respect to his claims against appellee Metro General Management, Inc. (Metro). 
Metro also appealed. The dispute between the two arose from Metro’s sale of an auto
stereo business to Birkenfeld. The latter, through four issues, contends that the trial court
erred in 1) denying his motion for partial summary judgment under the Structured
Settlement Protection Act, 2) entering judgment based upon a finding that he failed to pay
the franchise purchase fee, and 3) denying him attorney’s fees. In turn, Metro asserts that
the trial court erred in 1) submitting to the jury the question whether its attempt to lock
Birkenfeld from the premises and business was a breach of the Franchise/Purchase
Agreement, 2) submitting jury questions regarding its violation of the Deceptive Trade
Practices Act (DTPA), 3) failing to disregard the jury’s answer regarding Birkenfeld’s
damages because that evidence did not constitute present sense recorded, 4) rendering
judgment in accordance with the jury’s finding that Birkenfeld did not fail to pay the
franchise purchase fee or price and that no damages should be awarded for Birkenfeld’s
failure to pay operating fees, 5) failing to award it attorney’s fees, and 6) dissolving the
deed of trust Birkenfeld gave it. We modify the judgment and affirm it as modified.
Background
          Metro owned two retail stores in Lubbock. Birkenfeld worked at one of the stores
for approximately ten years and considered purchasing the 34th Street location. Eventually,
the two entered into a Franchise/Purchase Agreement encompassing the sale of the 34th
Street location. According to the agreement, Birkenfeld was to pay Metro $60,000 for
goodwill and a license to operate the store, $10,000 for furniture, fixtures, and equipment,
$30,000 for current inventory, and $22,000 for a Dodge pickup. So too did Birkenfeld
agree to pay a weekly operating fee of $400 or 8% of all gross income, whichever was
greater. The parties also contemplated that Birkenfeld would pay $100,000 of the expense
through an assignment of a $100,000 payment he was to receive on September 8, 2003. 
The payment was part of a structured settlement periodically received by Birkenfeld after
suffering injuries as a minor. 
          The parties also executed a separate lease agreement for Birkenfeld’s use of the
building. Under that agreement, he obligated himself to pay a monthly rental of $2,000
plus property taxes. And, as security for performing these obligations, Birkenfeld granted
Metro a deed of trust on some property he owned. 
           Birkenfeld began operating the 34th Street location in August 2002. However, he 
fell behind in paying the operating fees and rent. Thereafter, he conveyed to Metro a 1992
Dodge Viper in satisfaction of approximately $47,000 worth of the arrearage. Metro
nonetheless continued to assert that it was owed money. So, on September 11, 2003, and
without prior notice, Metro locked Birkenfeld and his employees out of the business
premises. It then sold the business, the inventory, tools, and Birkenfeld’s personalty to
another party. These circumstances formed the basis of the suit from which this appeal
arose. 
Issue 1 - Assignment of Annuity Benefits
          Birkenfeld’s first issue is twofold. First, he asserts that the trial court erred in
refusing to grant his motion for partial summary judgment wherein he sought a ruling that
vitiated his assignment of the $100,000 payment. Then he argues that the trial court erred
in refusing to void the assignment after trial. Birkenfeld believed himself entitled to such
relief because the transfer purportedly failed to comply with the Texas Structured
Settlement Protection Act and, therefore, was void. We overrule the issue.
          As for the failure to grant the partial summary judgment, we note that the issue
underlying said motion was ultimately tried to the jury. Having been so tried, any
complaints about the trial court’s decision viz the motion were rendered moot. Fling v.
Steed, No. 07-99-0450-CV, 2001 Tex. App. Lexis 1585 at *11 (Tex. App.–Amarillo March
12, 2001, pet. denied).
          Next, whether the assignment was valid formed the basis of a prior declaratory
action. That action resulted in the entry of an agreed order wherein the trial court ruled that
the assignment was “valid and enforceable,” that Metro owned the $100,000 payment, and 
that the insurance company from which payment was to come pay the sum to Metro. More
importantly, no one appealed the decree; rather each party “approved” it “as to form and
content” and allowed it to become final.
          Once the dispute between the parties began, however, Birkenfeld again questioned
the enforceability of the assignment and asked the trial court to rule on the matter as part 
of this legal proceeding. According to Birkenfeld, the conveyance was void because it
failed to comport with various provisions of the Texas Structured Settlement Protection Act,
Tex. Civ. Prac. & Rem. Code Ann. §§141.001-141.007 (Vernon 2005), and that those
provisions could not be waived. 
          That the current effort to question the assignment constitutes a collateral attack
upon the prior decree is clear. See Browning v. Prostok, 165 S.W.3d 336, 346 (Tex. 2005)
(describing a collateral attack as an attempt to avoid the binding effect of a judgment in a
proceeding brought to obtain some specific relief which the prior judgment bars). While
one may collaterally attack a void judgment, Browning v. Placke, 698 S.W.2d 362, 363
(Tex. 1985), a judgment is void only when the rendering court lacked personal or in rem
jurisdiction over the parties or res, lacked subject matter jurisdiction, lacked jurisdiction to
enter the particular judgment, or lacked the capacity to act. Browning v. Prostock, 165
S.W.3d at 346. Moreover, a distinction must be drawn between a trial court’s failure to
exercise a power in accordance with a statute and the ability to exercise a particular power
to begin with; while lacking the ability to exercise a power may render the act void, having
the ability to act but failing to do so in accordance with the law merely renders the decision
voidable. Parkins v. Martin, 395 S.W.2d 862, 866 (Tex. Civ. App.–Amarillo 1965, writ ref’d
n.r.e.). And, we construe the circumstances before us as falling within the latter category.
          According to the record, the trial court that executed the prior decree was a district
court. Furthermore, we know of no other court (county, justice or the like) that had
exclusive jurisdiction over the amount or topic in dispute. Consequently, the district court
rendering the prior decree had general subject matter jurisdiction to act on the matter. See 
Tex. Const. art. 5, §8 (stating that a district court has original and concurrent jurisdiction
over all matters not within the exclusive jurisdiction of another court). 
          Additionally, it cannot be doubted that the parties submitted themselves to the
court’s jurisdiction. Indeed, their signature on the decree evinces as much. And,
concerning the prior court’s authority or capacity to adjudicate whether the assignment was
valid, the statute mentioned by Birkenfeld states that an assignment of the ilk in question
shall be ineffective “unless the transfer has been approved in advance in a final court order
. . . .” Tex. Civ. Prac. & Rem. Code Ann. §141.004 (Vernon 2005). Since the statute
contemplates approval by a trial court, we cannot but hold that district courts have the
capacity to determine the enforceability of an agreement through which one assigns
settlement benefits to another. 
          So, given the circumstances before us, we cannot say that the district court
rendering the prior decree lacked either jurisdiction or capacity to do so. Thus, the decree
was not void. At most, the prior court simply failed to abide by aspects of the Structured
Settlement Protection Act which merely rendered its decision voidable through a direct
appeal. And, being voidable as opposed to void, it was not susceptible to collateral attack
via the cause now before us.  
Issue 2 and Cross-Issue 4 – Breach of Franchise/Purchase Agreement 
          Birkenfeld next asserts that the trial court erred in entering judgment against him for
damages related to his failure to pay the franchise fee when the jury found that he had not
failed to pay it. We overrule the issue.
          In response to Question No. 7, the jury answered “no” when asked whether
Birkenfeld breached the agreement by failing to pay the aforementioned fee or purchase
price. However, in response to Question No. 10(1), it answered $60,000 when asked to
determine the sum which would reasonably compensate Metro for that supposed breach.


 
These two answers purportedly conflicted because damages could not be awarded to
recompense an act that did not breach the contract. So, the answer to issue 10(1) had to
be discarded, according to Birkenfeld. Yet, he did not complain about the alleged conflict
before the trial court discharged the jury. That was required to preserve the complaint for
appeal. KMG Kanal-Muller-Gruppe Deutschland GMBH & Co. KG v. Davis, 175 S.W.3d
379, 392 (Tex. App.–Houston [1st Dist.] 2005, no pet.); Columbia Medical Center of Las
Colinas v. Bush, 122 S.W.3d 835, 861 (Tex. App.–Fort Worth 2003, pet. denied). 
Therefore, the alleged conflict was waived.



          Through cross-issue four, Metro complains about the jury’s decision to award no
damages for Birkenfeld’s failure to pay operating fees. Assuming arguendo that the
contention has merit, we conclude that Metro suffered no harm from the purported mistake. 
This is so because the damages awarded it per the jury’s answer to question 10(1) (i.e.
failure to pay the franchise fee or purchase price) totaled $60,000. Yet, according to
Metro, all that was due it from Birkenfeld’s omission regarding the payment of the purchase
price was $22,000. So, Metro effectively received $38,000 to which it was not entitled. 
More importantly, this excess more than covered the range of operating fees Metro
considered due from its opponent, that range being from $1,127.93 to approximately
$10,000.
          We further reject Metro’s allegation that it proved, as a matter of law, that Birkenfeld
omitted to pay the remaining $22,000 of the franchise purchase fee. The fee apparently
consisted of a licensing fee and goodwill equal to $60,000, furniture, equipment and
fixtures valued at $10,000, inventory worth $30,000, and $22,000 for a Dodge pickup that
Birkenfeld was to buy. Combining each item revealed a total fee of $122,000. Moreover,
the record illustrates that $100,000 of that total was paid through the assignment of the
aforementioned structured settlement payment. This left a balance of $22,000, a sum
which happened to equal the cost of the Dodge truck. Yet, as of the time of trial, Metro had
possession of that vehicle. Because Metro had possession of it, some evidence existed
upon which a jury could have reasonably concluded that Birkenfeld did not owe the
$22,000 attributable to it and that the answer to issue seven was “no.”
Issues 3 and 4 and Cross-Issue 5 - Attorney’s Fees
          Issues three and four and cross-issue five deal with the trial court’s refusal to award
either party their attorney’s fees. Both litigants assert that they were prevailing parties and,
thus, entitled to same. Moreover, the jury found that both litigants incurred reasonable
attorney’s fees equal to $30,000 “for preparation of trial,” $10,000 “for an appeal to the
Court of Appeals,” and $7,500 “for an appeal to the Supreme Court . . . .” We overrule the
complaint of Metro and sustain that of Birkenfeld.
          An award of attorney’s fees for prevailing upon a claim of breached contract or
deceptive trade practice is mandatory. Manon v. Tejas Toyota, Inc., 162 S.W.3d 743, 751
(Tex. App.–Houston [14th Dist.] 2005, no pet.). But, to prevail, one must both successfully
prosecute a cause of action and recover damages related to that cause. Mustang Pipeline
Co. v. Driver Pipeline Co., 134 S.W.3d 195, 201 (Tex. 2004); Green Int’l, Inc. v. Solis, 951
S.W.2d 384, 390 (Tex. 1997). 
          Here, while the jury determined that Birkenfeld had breached the agreement by
neglecting to pay the operating fees and report gross weekly sales, it awarded Metro no
damages related to those acts. And, to the extent that damages were awarded for
Birkenfeld’s purported failure to pay the franchise purchase fee or price, the jury found that
he had not breached the agreement in that way. So, the circumstances before us do not
satisfy the requirements of Mustang or Green, and the trial court did not err in denying
Metro attorney’s fees.
          As for Birkenfeld’s request for attorney’s fees, we note that the jury found that Metro
breached the purchase agreement by locking him out of the premises and business. So
too was Birkenfeld awarded damages for breaching the agreement. Consequently, the trial
court was obligated to award him attorney’s fees, and it erred by not doing so.
Cross-Issue 1 - Breach of Franchise/Purchase Agreement by Lockout
          Through its first cross-issue, Metro contends that the trial court erred in asking the
jury whether Metro breached the purchase agreement by locking out or excluding
Birkenfeld from the business premises. This was purportedly so because Metro had no
obligation to allow Birkenfeld on the premises that he leased since the lease said nothing
about granting him access to the property. We overrule the issue.
          Implicit in every lease is a covenant of peaceful enjoyment. Four Bros. Boat Works,
Inc. v. Tesoro Petroleum Companies, Inc., 217 S.W.3d 653, 666-67 (Tex. App.–Houston
[14th Dist.] 2006, pet. denied). In other words, the law expressly grants the lessee a right
to enjoy that which he leased without impermissible interference from the lessor. So too
does the law recognize the requirement that one party to a contract avoid interfering with
the other party’s performance of its contractual duties. Case Corp. v. Hi-Class Business
Systems of America, Inc., 184 S.W.3d 760, 770 (Tex. App.–Dallas 2005, pet. denied). So,
it matters not whether Metro and Birkenfeld expressly stated in the lease before us that
Birkenfeld had access to the leased property; the right was implied by law.
 
Cross-Issue 2 - Consumer Status
          Next, Metro argues that the trial court erred in also asking the jury if Metro violated
the DTPA because Birkenfeld was not a consumer under that statute. We overrule the
issue.
          According to the DTPA, a consumer is one who “seeks or acquires by purchase or
lease, any goods or services.” Tex. Bus. & Com. Code Ann. §17.45(4) (Vernon Supp.
2007). Moreover, goods are defined as “tangible chattels or real property purchased or
leased for use,” id. §17.45(1), and services are defined as “work, labor, or service
purchased or leased for use, including services furnished in connection with the sale or
repair of goods.” Id. §17.45(2).
          Here, Birkenfeld purchased not only the right to sell electronic equipment and like
intangibles but also $30,000 worth of purportedly merchantable inventory located on the
premises, a 1999 Dodge pickup, the services of one of Metro’s advisory personnel, and the
option to purchase inventory through Metro (which could be categorized as a service as
well). Given these circumstances, we cannot say that the primary object in purchasing the
business in question consisted of acquiring general intangible assets (as suggested by
Metro) and find no error in the trial court determining that Birkenfeld was a consumer under
the DTPA. See Clary Corp. v. Smith, 949 S.W.2d 452, 464-65 (Tex. App.–Fort Worth
1997, pet. denied) (finding services such as factory leads, local trade show support, copies
of a sales video, one percent annual advertising discount, annual prospect lists, an
engineering, testing, and sales support package, and a sales training program to be the
primary object of the purchase of a distributorship). 
Cross-Issue 3 - Admission of Damages
          Metro next complains of the admission into evidence of Exhibits 17, 19, 20, 22, and
23 which were lists made by Birkenfeld of his damages related to his conversion claim. In
these exhibits, Birkenfeld assigned a value to various items of his personal property within
the store when Metro locked him out and sold the business to a third party. Before us,
Metro contends that the items were not admissible as an exception to the hearsay rule. 
We overrule the issue. 
          To the extent that the court’s reference, during trial, to “present sense recorded” 
intimated that the documents here were admissible as an exception to the hearsay rule,
Birkenfeld did not object to that determination. Indeed, his objection said nothing of
hearsay. Moreover, when read in context, the trial court was not considering the
documents as some form of hearsay and admitting them under an exception to the
hearsay rule. Rather, it viewed the evidence simply as Birkenfeld’s effort to itemize, in
writing, the nature of the property Metro converted and place a value on them. And, Metro
does not attempt to illustrate on appeal why the evidence, when viewed in that context,
was inadmissible. Nor does it reassert here the objections it uttered below. Consequently,
the dispute was waived. See Hoxie Implement Co., Inc. v. Baker, 65 S.W.3d 140, 151
(Tex. App.–Amarillo 2001, pet. denied) (holding that when the complaint on appeal does
not comport with that asserted at trial, the issue is waived). 
Cross Issue 6 - Deed of Trust
          Finally, Metro asserts that if we modify the final judgment in its favor, then we must
also reverse the trial court’s decision to dissolve the deed of trust granted Metro by its
opponent. Because our decision does not so modify the judgment, the foundation
underlying Metro’s argument is missing. Thus, we overrule the contention. 
          Accordingly, we modify that portion of the judgment wherein the trial court denied
Birkenfeld his attorney’s fees, order that Birkenfeld recover attorney’s fees from Metro in
the sums found by the jury, that is, $30,000 for trial preparation, $10,000 for an appeal to
this court, and $7,500 for an appeal to the Texas Supreme Court, and affirm the judgment
as modified. 
 
                                                                           Brian Quinn 
                                                                          Chief Justice
 
Pirtle, J., concurs in the result.