NUMBER 13-04-00069-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

 

BFI WASTE SYSTEMS OF NORTH AMERICA, INC.

AND BROWNING-FERRIS INDUSTRIES,
INC.,                             Appellants,

 

                                                             v.

 

NORTH ALAMO WATER SUPPLY CORPORATION,

JIMMY STEIDINGER, ENGELMAN IRRIGATION

DISTRICT, AND HIDALGO COUNTY DRAINAGE

DISTRICT NO. 1,                                                                              Appellees.

 

    On appeal from the 92nd District Court of Hidalgo County,
Texas.

 

 

                    MEMORANDUM OPINION

 

      Before Chief Justice Valdez and Justices Hinojosa, and
Yañez

                         Memorandum
Opinion by Justice Hinojosa

 








Appellees, North Alamo Water Supply Corporation,
Jimmy Steidinger, Engelman Irrigation District, and Hidalgo County Drainage
District No.1, sued appellants, BFI Waste Systems of North America, Inc. and
Browning-Ferris Industries, Inc., (collectively, ABFI@), asserting causes of action for nuisance, breach
of contract, fraud and negligent representation, and sought specific
performance of a Compromise, Release and Indemnity Agreement (ASettlement Agreement@).  After a jury found in favor of appellees and
against appellants, the trial court signed a judgment granting specific
performance and injunctive relief.  In
three issues, BFI contends the trial court erred in granting a permanent
injunction, or at a minimum, the injunction must be modified to conform with
governing legal requirements.[1]  We affirm in part, and reverse and remand in
part.

                                A.  Factual
and Procedural Background

On September 19, 1988, the Texas Department of
Health issued Permit 1948, authorizing BFI to operate a municipal solid-waste
landfill in Hidalgo County.  Appellees
opposed the permit, and in accordance with the rules governing judicial review
of administrative agency decisions, North Alamo, Steidinger, and Engelman
Irrigation challenged the issuance of the permit in a Travis County district
court.  While the agency appeal was
pending, BFI filed suit against the Hidalgo County Drainage District No.1 after
the Drainage District denied BFI=s application for a drainage discharge permit.  Ultimately, the Travis County district court
affirmed the agency=s decision to issue Permit 1948, and the district
court=s judgment was affirmed by the Austin Court of
Appeals.  See N. Alamo Water Supply
Corp. v. Tex. Dep=t of Health,
839 S.W.2d 448 (Tex. App.BAustin 1992, writ denied).  








On September 22, 1993, BFI and the appellees
executed a Compromise, Release & Indemnity Agreement (ASettlement Agreement@) to
settle and terminate the lawsuit filed by BFI in Hidalgo County against the Drainage District.  The Settlement Agreement provides that in
consideration of the Drainage District=s reconsideration of BFI=s drainage discharge application, BFI agreed
to comply with nine separately enumerated provisions.

On July 28, 1997, BFI filed an application
with the Texas Commission on Environmental Quality (ATCEQ@),[2]
requesting an amendment to its permit to allow it to vertically expand the
landfill, begin accepting Class I industrial waste, and extend the life of the
landfill.  Appellees opposed BFI=s application for amendment and a
contested-case hearing was scheduled by the State Office of Administrative
Hearings.

Prior to the contested-case hearing, North
Alamo and Steidinger brought the present underlying suit alleging breach of the
Settlement Agreement and seeking to enjoin BFI from proceeding before the TCEQ
to amend the permit.  Engelman Irrigation
and the Drainage District intervened. 
The trial court granted the temporary injunction.  However, on appeal, the temporary injunction
was dissolved by this Court.  See BFI
Waste Systems of N. Am., Inc. v. N. Alamo Water Supply Corp., No.
13-99-469-CV, 2000 Tex. App. LEXIS 1282, at *5 (Tex. App.BCorpus Christi, Feb. 24, 2000, pet. dism=d w.o.j.). 









In April and May 2001, the TCEQ conducted a
contested-case hearing on BFI=s application to amend Permit 1948.  The TCEQ did not consider the rights of the
parties under the Settlement Agreement. 
On January 10, 2002, the TCEQ issued Permit 1948-A to BFI, authorizing
the expansion of the landfill.  Appellees
appealed the decision to the Travis County district court, which affirmed the
agency=s decision. 
The district court=s judgment was recently affirmed by the
Austin Court of Appeals.  See Citizens
Against Landfill Location v. Tex. Comm=n on Envtl. Quality, 169 S.W.3d 258, 275 (Tex. App.BAustin 2005, pet. denied).

Beginning February 4, 2003, appellees= breach of contract claim was tried to a
jury.  At the conclusion of the trial,
the trial court found that the Settlement Agreement was ambiguous and submitted
the case to the jury.  The jury found
that:  (1) BFI had agreed the Alandfill would be built according to the
terms and conditions of Permit No. 1948, as Permit 1948 existed on the date the
settlement agreement was reached,@ and BFI breached that agreement; (2) BFI agreed
that it Awould use the gradient for the landfill
according to the terms and conditions in Permit 1948,@ and BFI breached that agreement; and (3)
BFI breached the terms of the Settlement Agreement requiring BFI to Aprovide for onsite detention and drainage
facilities to retain and to discharge a 100-year, 24-hour frequency storm@ and Ause values for runoff coefficients on the
basis of 75% vegetation coverage.@

After hearing appellees= request for injunctive relief, the trial
court signed a judgment granting appellees= permanent injunctive relief.  The trial court=s judgment also awarded attorney=s fees to each appellee and, in the
alternative, awarded North Alamo the amount of future damages found by the
jury.  Appellants now appeal from the
trial court=s judgment.

                                         B.  Grant
of Permanent Injunction








In their second issue, appellants contend
the trial court erred in granting a permanent injunction that conflicts with
Permit 1948-A.  Specifically, appellants
assert the jury=s breach of contract findings are immaterial
and cannot support the trial court=s injunction because (1) the trial court
lacked jurisdiction to nullify the TCEQ=s amended permit by issuing a conflicting
permanent injunction,[3]
(2) the law of the case doctrine forecloses appellees= breach of contract claim based on the use
of the amended permit, (3) the unambiguous Settlement Agreement contains no
term precluding permit amendments, and (4) the jury=s findings to Question Nos. 1, 2, 3, 4, and
5 are not supported by legally and factually sufficient evidence.  Appellants also contend the record does not
support appellees= entitlement to an injunction or specific
performance.

                                                              1.  Law of the Case

Appellants contend the jury=s findings in response to Questions 1, 2, 3,
and 4 are immaterial because the law of the case doctrine applies.  Specifically, appellants assert that because
this Court previously held that the Settlement Agreement did not prohibit BFI
from attempting to amend Permit 1948, see BFI Waste Systems of N. Am., Inc.,
2000 Tex. App. LEXIS 1282, at *4, it necessarily follows that BFI=s construction and operation of the
landfill, consistent with the terms of an amended permit, cannot serve as a
basis for contract liability.  We
disagree.








The law of the case doctrine is defined as
that principle under which questions of law decided on appeal to a court of
last resort will govern the case throughout its subsequent stages.  Briscoe v. Goodmark Corp., 102 S.W.3d
714, 716 (Tex. 2003) (citing  Hudson
v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986)).  By narrowing the issues in successive stages
of the litigation, the law of the case doctrine is intended to achieve
uniformity of decision as well as judicial economy and efficiency.  Id. 
The doctrine is based on public policy and is aimed at putting an end to
litigation.  Id.

A decision rendered on an issue before the
appellate court does not absolutely bar re‑consideration of the same
issue on a second appeal.  Id.  Application of the doctrine lies within the
discretion of the court, depending on the particular circumstances surrounding
that case.  Id.

In the previous appeal to this Court, the
issue was whether the trial court abused its discretion in granting a temporary
injunction prohibiting BFI from pursuing an amended permit from the TCEQ.   See BFI Waste Systems of N. Am., Inc.,
2000 Tex. App. LEXIS 1282.  In that
appeal, this Court did not address the following issues presently before
us:  (1) the ambiguity of the Settlement
Agreement, (2) the scope or intent of the Settlement Agreement, (3) whether BFI
breached the Settlement Agreement, and (4) whether an amendment to the permit
would constitute a breach of the Settlement Agreement.  We conclude our prior holding that the
Settlement Agreement did not prohibit BFI from attempting to amend Permit 1948
does not govern  the issues before us in
the present appeal.  Therefore, we hold
the law of the case doctrine is inapplicable.

                                         2.  Ambiguity of the Settlement Agreement








Appellants contend that the jury=s findings in response to Question Nos. 1,
2, 3, and 4 are immaterial because they are predicated on the existence of an
obligation not to seek amendment of Permit 1948, when no such obligation exists
within the four corners of the unambiguous Settlement Agreement.  However, as explained above, the issue is not
whether BFI was entitled to seek an amendment of Permit 1948, but whether BFI
entered into a settlement agreement with appellees that the landfill would be
built according to the terms and conditions of Permit 1948.  Essentially, BFI argues that the trial court
erred in finding that the Settlement Agreement is ambiguous.

Whether a contract is ambiguous is a
question of law.  Tex. Farm Bureau
Mut. Ins. Co. v. Sturrock, 146 S.W.3d 123, 126 (Tex. 2004); Am. Mfrs.
Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003).   An ambiguity does not arise simply because
the parties offer conflicting interpretations. 
Schaefer, 124 S.W.3d at 157. 
An ambiguity exists only if the contract language is susceptible to two
or more reasonable interpretations.  Id.;
Kelly-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex.
1998).  When construing the contract=s language, we must attempt to give effect
to all contractual provisions so that none will be rendered meaningless.  Schaefer, 124 S.W.3d at 157; Kelly-Coppedge,
980 S.W.2d at 464.

The language at issue is the phrase Aas permitted@ that is used in the second provision of the
Settlement Agreement:  AThat BFI will use values for runoff
coefficients on the basis of 75% vegetation coverage and clay soil with
gradient as permitted. . . .@  Also
at issue is the reference to APermit No. 1948@ in Exhibit A to the Settlement Agreement.








The parties dispute whether the language Aas permitted@ means Aas permitted under Permit 1948.@ 
Appellees argue that it is not unreasonable to interpret the Settlement
Agreement such that BFI agreed to build the landfill as permitted under Permit
1948, and to do otherwise would strip the design criteria specifically set
forth in the agreement of all meaning.  Conversely,
BFI argues that the language in no way incorporates Permit 1948 into the
Settlement Agreement, and the agreement retains its meaning without Permit
1948.  We conclude that both parties have
provided reasonable interpretations of the agreement.  Accordingly, we agree with the trial court=s finding that the language of the
Settlement Agreement is ambiguous.

                                                 3.  Legal and Factual Sufficiency

Appellants contend the evidence is legally
and factually insufficient to support the jury=s findings in response to Question Nos. 1,
2, 3, 4, and 5.  

In reviewing the legal sufficiency of the
evidence, we view the evidence in the light favorable to the verdict, crediting
favorable evidence if reasonable jurors could, and disregarding contrary
evidence unless reasonable jurors could not. 
City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005).  There is legally insufficient evidence or
"no evidence" of a vital fact when (1) there is a complete absence of
evidence of a vital fact, (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact,
(3) the evidence offered to prove a vital fact is no more than a mere
scintilla, or (4) the evidence conclusively establishes the opposite of the
vital fact.  Merrell Dow Pharms., Inc.
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). 
More than a scintilla of evidence exists when the evidence supporting
the finding, as a whole, "rises to a level that would enable reasonable
and fair‑minded people to differ in their conclusions."  Id. (quoting Burroughs Wellcome Co.
v. Crye, 907 S.W.2d 497 (Tex. 1995)). 
If the evidence is so weak as to do no more than create a mere surmise
or suspicion of its existence, its legal effect is that it is no evidence.  Haynes & Boone v. Bowser Bouldin, Ltd.,
896 S.W.2d 179, 183 (Tex. 1995).








In reviewing the factual sufficiency of the
evidence, we consider, weigh, and examine all the evidence presented at
trial.  Plas‑Tex, Inc. v. U.S.
Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  We set aside a jury=s finding for factual insufficiency only if
it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and manifestly unjust.  Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

First, appellants argue that because
Questions 1, 2, 3, and 4 were predicated on the terms and conditions of Permit
1948, and appellees only introduced excerpts of Permit 1948 into evidence, the
jury=s findings are not supported by legally
sufficient evidence.

At trial, appellees introduced Plaintiffs= Exhibit No. 30 into evidence as Athe original Permit 1948 issued by the Texas
Department of Health.@  The
parties agree that 153 pages of Permit 1948, comprising the department=s findings of fact and conclusions of law,
are not included in Plaintiffs= Exhibit No. 30.  However, included in Plaintiffs= Exhibit No. 30 under the heading ASpecial Provisions@ is special provision G which provides, AAll representations with regard to
construction plans and operating procedures in the permit application are
conditions upon which this permit is issued.@  A
complete copy of the application for Permit 1948 was introduced into evidence
as Plaintiffs= Exhibit No. 91.  We conclude that Plaintiffs= Exhibit No. 30, together with Plaintiffs= Exhibit No. 91, contains all the pertinent
terms and conditions of Permit 1948, thereby providing legally sufficient
evidence to support the jury=s findings.








The jury answered in the affirmative to
Question No. 1, ADid Plaintiffs and BFI agree that the
landfill would be built according to the terms and conditions of Permit No.
1948, as Permit 1948 existed on the date the settlement agreement was reached?@ 
Appellants argue that there is no evidence to support the jury=s finding because there is no evidence that
BFI agreed to build and operate the landfill indefinitely according to the
terms and conditions of Permit 1948 as that permit existed on the date the
Settlement Agreement was reached.[4]

Because the Settlement Agreement is
ambiguous, extrinsic evidence may be admitted to show the circumstances
surrounding the drafting of the disputed provision in order to glean the
intentions of the parties.  Robinson
v. Robinson, 961 S.W.2d 292, 298 (Tex. App.BHouston [1st Dist.] 1997, no pet.); RGS,
Cardox Recovery, Inc. v. Dorchester Enhanced Recovery Co., 700 S.W.2d 635,
637 (Tex. App.BCorpus Christi 1985, writ ref=d n.r.e.). 
The jury, as the finder of fact, is the sole judge of the credibility of
the witnesses and the weight to be given their testimony.  Leyva v. Pacheco, 358 S.W.2d 547, 549
(Tex. 1962); Tanner v. Karnavas, 86 S.W.3d 737, 745 (Tex. App.BDallas 2002, pet. denied).  

Charles Browning, North Alamo=s general manager, testified that he was
present during the negotiations surrounding the Settlement Agreement.  He stated that the basis of discussion at
that time was Permit 1948, which is referenced in Exhibit A to the Settlement
Agreement.  He testified that the
reference to Permit 1948 in Exhibit A was meant to incorporate Permit 1948 into
the Settlement Agreement.  He further
stated that BFI represented to the parties involved in the negotiations that
the landfill would be built in accordance with Permit 1948 and the nine
additional items provided in the Settlement Agreement.








Jimmy Steidinger stated that he was present
at the settlement negotiations and his main concern was that the landfill would
be constructed to a height of 44 feet from ground level and no higher.  He said that Permit 1948 restricted the
landfill height to 44 feet, and Permit 1948 was included in the Settlement
Agreement, as it is referenced in Exhibit A. 
He testified that if the Settlement Agreement had allowed BFI to build
the landfill higher than 44 feet, he would not have signed the agreement.

Leonard Camarillo, a board member of North
Alamo, testified that when the offer to settle was presented to the board of
directors, the agreement was to allow BFI to construct its landfill to a height
of 44 feet from ground level, as permitted by Permit 1948.

Viewing the evidence in the light most
favorable to the jury=s finding, crediting favorable evidence if
reasonable jurors could, and disregarding contrary evidence unless reasonable
jurors could not, we conclude the evidence is legally sufficient to support the
jury=s finding in response to Question No. 1.[5]  See City of Keller, 168 S.W.3d at 807.

                                      4.  Record Does Not Support Injunctive Relief

Appellants contend that, based on the record
before us, appellees are not entitled  to
injunctive relief and specific performance. 
The standard of review in an appeal from a permanent injunction is
whether a clear abuse of discretion occurred. 
Tyra v. City of Houston, 822 S.W.2d 626, 631 (Tex. 1991); City
of Corpus Christi v. Five Citizens of Corpus Christi, 103 S.W.3d 660, 662
(Tex. App.BCorpus Christi 2003, pet. denied).








Performance of a contract may be
specifically enforced by an injunction restraining acts in violation of the
contract, effectively comprising a negative decree of specific
performance.  Fuller v. Walter E.
Heller & Co., 483 S.W.2d 348, 351 (Tex. Civ. App.BDallas 1972, no writ).  In order to be entitled to a permanent
injunction, the requesting party must plead and prove the following:  (1) a wrongful act, (2) imminent harm, (3) irreparable
injury, and (4) no adequate remedy at law. 
Jordan v. Landry=s Seafood Rest., Inc., 89 S.W.3d 737, 742  (Tex. App.BHouston [1st Dist.] 2002, pet. denied) (op.
on reh=g).          

Generally, contractual rights are not
enforced by writs of injunction because inadequate remedy at law and
irreparable injury are rarely shown when a suit for damages for breach of
contract is available.  Canteen Corp.
v. Republic of Tex. Props., 773 S.W.2d 398, 401 (Tex. App.BDallas 1989, no writ).  An injury is irreparable if the injured party
cannot be adequately compensated in damages or if damages cannot be measured by
any certain pecuniary standard.  Butnaru
v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002).  Damages alone do not provide an adequate
remedy when they are difficult to calculate because of the nature of the
applicant=s loss. 
TCA Bldg. Co. v. Northwestern Res. Co., 890 S.W.2d 175, 179 (Tex.
App.BWaco 1994, no writ).

The ability to calculate damages is
reflected in the jury=s finding in response to Question No. 6 that
$2,018,777 would adequately compensate North Alamo for damages that Ain reasonable probability will be sustained
in the future.@  This
finding by the jury not only shows that injury is reparable, but also indicates
an adequate remedy at law.  Because
appellees failed to establish irreparable injury and no adequate remedy at law,
we hold the trial court abused its discretion in granting injunctive relief.

 








                                             C.  Alternative
Damage Award

In their third issue, appellants contend the
evidence is legally and factually insufficient to support the jury=s finding that $2,018,777 would adequately compensate
North Alamo for future damages.[6]

Texas follows the reasonable probability
rule with respect to the recovery of future damages.   MCI Telecomms. Corp. v. Tex. Utils. Elec.
Co., 995 S.W.2d 647, 654-55 (Tex. 1999). 
The reasonable probability rule required North Alamo to present evidence
(1) that, in reasonable probability, it will incur expenses in the future, and
(2) the probable reasonable amount of the future expenses.  Id. 
Under this rule, the award of future damages rests with the sound
discretion of the jury.  Dixon v.
Modelist, 157 S.W.3d 454, 456 n.1 (Tex. App.BHouston [14th Dist.] 2004, pet denied).  








Appellees presented evidence which showed
that if BFI constructs and operates the landfill consistent with Permit 1948-A,
as opposed to Permit 1948, contamination of the water supply is reasonably
probable.  Under Permit 1948-A, the
maximum elevation of the landfill is expanded from 122 feet above mean sea
level to 205 feet above mean sea level, the amount of waste allowed is expanded
from four million cubic yards to ten million cubic yards, the life of the
landfill is extended to twenty years, and the landfill may now accept Class1
industrial waste.  Such wastes may
include petroleum contaminated soils, treated, infectious, and pathological
waste, asbestos, pesticides and hazardous chemical containers, dead animals and
slaughterhouse waste, non-regulated PCB waste, lead-contaminated demolition
debris, and maquiladora waste.  Due to
the increase in size and life of the landfill, and the types of waste allowed
under Permit 1948-A, appellees presented evidence that the possibility for
contamination of the water supply increases dramatically.  The evidence established that if these
pathogens seep into the groundwater or overflow from the landfill=s detention facility during a flood, they
will contaminate the water at North Alamo=s Plant No. 5.

Testimony was presented regarding the
pathogens cryptosporidium and anthrax, which exist in dead animals, and the
health hazard they present if they enter the water supply.  Charles Browning testified that North Alamo=s present treatment process is incapable
of  properly removing such
pathogens.  Although appellants provided
testimony that North Alamo=s present treatment process is capable of
removing 99% of cryptosporidium and anthrax, the witness agreed that the more
incidences of such pathogens invading the water supply, the greater the
likelihood that they will overwhelm the treatment system and pass through.








Browning testified that because of the
increased possibility of contamination to North Alamo=s water supply, North Alamo must begin
planning for the future now.  He stated
that because of the time required to build and construct, they must anticipate
five years into the future regarding their needs.  North Alamo cannot wait until a problem
arises and then attempt to remedy it. 
Browning submitted a specific cost analysis for the relocation of water
lines, replacement of waterline crossings over open drain ditches, replacement
of existing filter media, replacement of the existing water treatment plant
with a reverse osmosis plant, addition of ultraviolet disinfection barrier,
installation of a plastic liner in the existing reservoir, construction of an
additional reservoir at North Alamo=s water treatment plant, increased testing
and monitoring, and additional annual operating costs, which totaled
approximately $24,974,115.  When asked to
consider the reasonableness and necessity of the above costs in considering
damages, the jury found North Alamo=s future damages to be $2,018,777.

Viewing the evidence in the light most
favorable to the jury=s finding, crediting favorable evidence if
reasonable jurors could, and disregarding contrary evidence unless reasonable jurors
could not, we conclude the evidence is legally sufficient to support the jury=s finding of future damages.  See City of Keller, 168 S.W.3d at
807.  We further conclude that the
evidence is not so contrary to the overwhelming weight of the evidence as to be
clearly wrong and manifestly unjust; thus, the evidence is factually sufficient
to support the jury=s finding of future damages.  See Cain, 709 S.W.2d at 176.

                                                         D.  Attorney=s Fees

In their third issue, appellants also argue
that the trial court erred in awarding attorney=s fees to North Alamo and Steidinger.

                                                                1.  North Alamo

Appellants contend the trial court erred in
awarding $325,000 to North Alamo for preparation and trial because it includes
fees expended in connection with the TCEQ contested hearing.  Appellees argue that the trial court did not
err in taking into consideration the amount of fees expended in the TCEQ case.








Section 38.001 of the civil practice and
remedies code provides that A[a] person may recover reasonable attorney=s fees from an individual or corporation, in
addition to the amount of a valid claim and costs, if the claim is for . . . an
oral or written contract.@  Tex. Civ. Prac. & Rem. Code Ann. ' 38.001 (Vernon 1997).  Nowhere does it provide that appellees may
recover attorney=s fees for proceedings outside of their
breach of contract claim, nor do appellees cite us any authority for such an
award.  Generally, a party seeking an
award of attorney=s fees must show that the fees were incurred
on a claim that allows recovery of such fees, and thus, is ordinarily required
to segregate fees incurred on claims allowing recovery of such fees from those
that do not.  Stewart Title Guar. Co.
v. Aiello, 941 S.W.2d 68, 73 (Tex. 1997); Stewart Title Guar. Co. v.
Sterling, 822 S.W.2d 1, 10 (Tex. 1991). 
Here, appellees failed to do so. 
Thus, we conclude the trial court erred in awarding attorney=s fees in connection with the TCEQ contested
hearing.  

Appellants further contend that the
conditional appellate attorney=s fees of $150,000 for an appeal to the
court of appeals and $150,000 for an appeal to the Texas Supreme Court found by
the jury is excessive because the evidence proffered to the jury indicated fees
in the amount of $30,000 for each appeal. 
The standard of review of an award of attorney=s fees is sufficiency of the evidence.  See Carlile v. RLS Legal Solutions, Inc.,
138 S.W.3d 403, 409 (Tex. App.BHouston [14th Dist.] 2004, no pet.).

Factors that a jury considers when
determining a reasonable attorney=s fee award include:

(1)       the time and labor required, the novelty
and difficulty of the questions involved, and the skill required to perform the
legal service properly;

 

(2)       the likelihood . . . that the acceptance
of the particular employment will preclude other employment by the lawyer;

 

(3)       the fee customarily charged in the
locality for similar legal services;

 

(4)       the amount involved and the results
obtained;








(5)       the time limitations imposed by the
client or by the circumstances;

 

(6)       the nature and length of the professional
relationship with the client;

 

(7)       the experience, reputation, and ability
of the lawyer or lawyers performing the services; and

 

(8)       whether the fee is fixed or contingent on
results obtained or uncertainty of collection before the legal services have
been rendered. 

 

Arthur Andersen & Co. v.
Perry Equip. Corp., 945
S.W.2d 812, 818 (Tex. 1997).  In addition
to outlining these factors in the jury question regarding attorney=s fees, the jury heard testimony regarding
the specific amount of $30,000 for an appeal to the court of appeals and
$30,000 for an appeal to the Texas Supreme Court.

Viewing the
evidence in the light most favorable to the verdict, we hold the evidence is
legally sufficient to support an award of only $60,000 in appellate attorney=s fees ($30,000 for appeal to the court of
appeals and $30,000 for appeal to the Texas Supreme Court).  See City of Keller, 168 S.W.3d at 807.

                                                2.  Jimmy Steidinger

Appellants also
contend the trial court erred in taking judicial notice of usual and customary
attorney=s fees in Hidalgo County in determining that
the fees requested by Steidinger were reasonable.








The reasonableness of attorney=s fees is generally a question of fact for
the jury=s determination.  Bocquet v. Herring, 972 S.W.2d 19, 21
(Tex. 1998); Manon v. Tejas Toyota, Inc., 162 S.W.3d 743, 751 (Tex. App.BHouston [14th Dist.] 2005, no pet.).  To guide the jury=s determination, a party may introduce
evidence in the form of sworn affidavits attesting to the reasonableness of the
fees.  See Tex. Civ. Prac. & Rem. Code Ann. ' 18.001 (Vernon 1997).  When these affidavits are uncontroverted,
they are Asufficient to support a finding of fact by
judge or jury that the amount charged was reasonable or . . . necessary.@ Manon, 162 S.W.3d at 751.  Furthermore, a court is entitled to take
judicial notice of the reasonableness of attorney=s fees, without the need for additional
evidence, if a claim is brought under section 38.001 of the Texas Civil
Practice and Remedies Code.  See Tex. Civ. Prac. & Rem. Code Ann. ' 38.004 (Vernon 1997); Gill Sav. Ass=n v. Chair King, Inc., 797 S.W.2d 31, 32 (Tex. 1990).

However, while a trial court is entitled to
take judicial notice of the reasonableness of attorney=s fees in a bench trial, when the case is
tried before a jury, the reasonableness of the attorney=s fees is a question of fact for the jury
and must be supported by evidence introduced at trial.  Manon, 162 S.W.3d at 751-52.

Here, Steidinger submitted an affidavit
regarding the reasonableness of his attorney=s fees months after the jury returned its
verdict.  Steidinger was required to put
forth this same or other evidence at trial to establish his right to recover
attorney=s fees. Id. at 752.  Because he failed to introduce any evidence
of attorney=s fees at trial, by affidavit or otherwise,
we hold he failed to meet his burden on the issue of attorney=s fees. 


E.  Conclusion

We have concluded the evidence is legally
sufficient to support the jury=s finding in its answer to Question No. 1
that appellees and BFI agreed that BFI would build the landfill in accordance
with the terms and conditions of Permit No. 1948, as Permit 1948 existed on the
date the Settlement Agreement was reached. 
We have also concluded that BFI=s factual sufficiency challenge to that
finding has been waived.  








We have also found that BFI=s legal and factual sufficiency challenge to
the jury=s response to Question No. 2 is inadequately
briefed and, therefore, waived. 
Accordingly, the jury=s finding in its answer to Question No. 2
that BFI breached the Settlement Agreement has not been challenged.  Because a finding of breach has been upheld,
it is unnecessary to address BFI=s sufficiency challenges to the jury=s findings in its answers to Question Nos.
3, 4, and 5, regarding additional breaches.

Because we have held that the trial court
abused its discretion in granting a permanent injunction against BFI, we reverse
that part of the trial court=s judgment granting the permanent
injunction.  We remand this case to the
trial court with instructions to render judgment in favor of North Alamo for
the amount of future damages found by the jury.

We have also concluded that the trial court
erred in granting attorney=s fees in favor of North Alamo based upon
evidence of unsegregated fees.  We
reverse that part of the trial court=s judgment granting attorney=s fees to North Alamo in the amount of
$325,000.  We remand the case to the
trial court with instructions to exclude the amount of attorney=s fees incurred by North Alamo in connection
with the TCEQ contested hearing and to award only the amount of attorney=s fees incurred by North Alamo in the
preparation and trial of the present underlying case.  See Sterling, 822 S.W.2d at 10.

We also reverse that part of the trial court=s judgment granting conditional appellate
attorney=s fees to North Alamo in the amount of
$150,000 for an appeal to the court of appeals and $150,000 for an appeal to
the Texas Supreme Court.  We remand the
case to the trial court with instructions to render judgment in favor of North
Alamo for conditional appellate attorney=s fees in the amount of $30,000 for an
appeal to the court of appeals and $30,000 for an appeal to the Texas Supreme
Court.








Furthermore, because we have held that
Steidinger failed to meet his burden on the issue of attorney=s fees, we reverse that part of the trial
court=s judgment granting attorney=s fees to Steidinger.  The remainder of the trial court=s judgment is affirmed.

 

FEDERICO G. HINOJOSA

Justice

 

 

Memorandum Opinion delivered and filed this

the 13th day of April, 2006.

 

 

 

 

 











[1] In its first issue, BFI generally
states that Athe trial court=s final judgment is erroneous under
the law and evidence, and must be vacated,@ but fails to provide any argument or appropriate citations
to authorities.  See Tex. R. App. P. 38.1(h).  Accordingly, we overrule appellants= first issue and address appellants= specific arguments set forth in
the remaining two issues.    





[2] Effective September 1, 2001, the
name of the agency responsible for issuing permits for municipal solid-waste
landfills was changed to the Texas Commission on Environmental Quality.  See Act of April 20, 2001, 77th Leg.,
R.S., ch. 965 ' 18.01, 2001 Tex. Gen. Laws 1985.  





[3]
As explained below, because
we hold that the trial court erred in granting the permanent injunction, it is
unnecessary to address this assertion.  See
Tex. R. App. P. 47.1.





[4] Appellants also contend that the
evidence is insufficient because the Settlement Agreement itself does not
preclude BFI from seeking an amendment to Permit 1948.  Because we have previously explained that the
right to seek an amendment from the State is irrelevant as to whether or not
BFI entered into an agreement to build and operate the landfill according to
certain terms and conditions with a third party, we will not address this
argument. See Tex. R. App. P.
47.1.   





[5] Because appellants failed to
provide any argument or citations to (1) the record relating to their factual
sufficiency challenge to the jury=s finding in response to Question No.1 and (2) their legal
and factual sufficiency challenges to the jury=s finding in response to Question
No. 2, we conclude they are inadequately briefed and, therefore, waived.  See Tex.
R. App. P. 38.1(h).  Furthermore,
because the jury answered in the affirmative to Question No. 2, finding that
BFI breached the Settlement Agreement, we need not address appellants= remaining arguments regarding the
legal and factual sufficiency of the evidence to support the jury=s findings to Question Nos. 3, 4,
and 5, also regarding breach of the Settlement Agreement.  See Tex.
R. App. P. 47.1.





[6]
At trial, North Alamo
was the only party that presented evidence of damages.  We note, however, that because the Settlement
Agreement provided for the issuance of a drainage permit by the Hidalgo County
Drainage District No.1 in consideration of BFI=s compliance with Permit
1948 and certain enumerated provisions, and the jury found that BFI materially
breached that agreement, the Drainage District is excused from its obligation
to perform under the Settlement Agreement. 
Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 196
(Tex. 2004) (AIt is a fundamental
principle of contract law that when one party to a contract commits a material
breach of that contract, the other party is discharged or excused from further
performance.@).